**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dora Wheatley, | No. CV-20-02137-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Dora Wheatley's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 18, "Pl. Br."), Defendant's Response Brief (Doc. 22, "Def. Br."), and Plaintiff's Reply (Doc. 24, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 17, AR.) and now affirms the Administrative Law Judge's decision. (AR. at 15–24.)

## I.      BACKGROUND

Plaintiff completed applications for Supplemental Security Income and Disability Insurance Benefits in December 2017 and January 2018 respectively. (AR. at 196-203.) Plaintiff alleged disability beginning in 2014. (AR. at 196, 202.) SSA denied Plaintiff's claims initially in March 2018 (AR. at 109-112) and upon reconsideration in May 2018 (AR. at 115-20.) Plaintiff then testified at a hearing held before an Administrative Law

1   Judge ("ALJ") on February 4, 2020. (AR. at 31–47.) In an unfavorable decision dated
2   February 26, 2020, the ALJ denied Plaintiff's applications. (AR. at 15–24.) On September
3   11, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.
4   (AR. at 1–3.) On November 6, 2020, Plaintiff filed this action seeking judicial review of
5   the denial. (Doc 1.)

6   **II.   LEGAL STANDARD**

7            To determine whether a claimant is disabled for purposes of the Act, the ALJ
8   follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of
9   proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*
10  *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether
11  the claimant has engaged in substantial gainful work activity. 20 C.F.R. §
12  404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two,
13  the ALJ determines whether the claimant has a "severe" medically determinable physical
14  or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled
15  and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's
16  impairment or combination of impairments meets or medically equals an impairment listed
17  in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so,
18  the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ
19  assesses the claimant's residual functional capacity ("RFC") and determines whether the
20  claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).
21  If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the
22  fifth and final step, where he determines whether the claimant can perform any other work
23  in the national economy based on the claimant's RFC, age, education, and work experience.
24  20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is
25  disabled. *Id.*

26           In determining whether to reverse an ALJ's decision, the district court reviews only
27  those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,
28  517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability

1    determination only if the determination is not supported by substantial evidence or is based

2    on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

3    more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

4    person might accept as adequate to support a conclusion considering the record as a whole.

5    *Id.* To determine whether substantial evidence supports a decision, the court must consider

6    the record as a whole and may not affirm simply by isolating a "specific quantum of

7    supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more

8    than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

9    conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

10   (citations omitted).

11   **III.    THE ALJ DECISION**

12          The ALJ concluded Plaintiff had not engaged in disqualifying substantial, gainful

13   work activity during the relevant period and that she suffered medically determinable and

14   severe depression and anxiety. (AR. at 17-18.) The ALJ concluded Plaintiff's impairments

15   did not meet or medically equal the criteria of a Listing, but that she had mild limitations

16   in the areas of understanding, remembering, and applying information and concentrating,

17   persistence, and pace, and moderate limitations in interacting with others and adapting or

18   managing oneself. (AR. at 19-20.) The ALJ concluded Plaintiff had no physical limitations

19   and could perform "simple and some detailed work with no more than occasional public

20   interaction." (AR. at 20.) The ALJ noted Plaintiff had past relevant work as both a stock

21   clerk and sales attendant, and that her RFC permitted her to return to past relevant work as

22   a stock clerk. (AR. at 22.) Alternatively, the ALJ concluded at step five that Plaintiff's

23   mental limitations had "little or no effect on the occupational base of unskilled work at all

24   exertional levels" and, consequently, that she could perform unskilled work. (AR. at 23.)

25          In determining this RFC, the ALJ found persuasive the prior administrative medical

26   opinions from state agency physicians (Drs. Fo and Morgan) at the initial and

27   reconsideration levels of review. (AR. at 21, 57-59, 70-72, 98-100.) These physicians

28   indicated Plaintiff had moderate limitations in her ability to understand, remember, and

carry-out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others; complete a normal workday or work week without interruption from symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in a work setting.[1] (AR. at 99-100.) In their narrative explanation of RFC, the doctors found Plaintiff is "[a]ble to understand and remember simple and some detailed instructions[]"; [a]ble to sustain [concentration, persistence, and pace] for simple and detailed work tasks under ordinary supervision[]"; "[a]ble to socialize with co-workers and supervisors with LSC[]"[2]; and [a]ble to adapt to the usual demands of low-stress work." (AR. at 99-100.)

With respect to the ALJ's conclusion Plaintiff could perform her past relevant work as a stock clerk, the parties agree the ALJ erred.[3] (Pl. Br. at 6, Def. Br. at 5 n. 4.) Defendant argues, however, that such error was harmless because the ALJ alternatively concluded Plaintiff was not disabled at step five. (Def. Br. at 5-8.) Plaintiff argues the ALJ erred by relying on the Medical-Vocational rules (the "grid rules") to find Plaintiff not disabled at step five and failing to solicit vocational expert ("VE") testimony regarding available jobs. (Pl. Br. at 8-13.) Plaintiff argues the limitations the ALJ assigned significantly affect the

---

[1] At reconsideration, Dr. Morgan concurred with the entire RFC previously outlined by Dr. Fo. (AR. at 100.) Because the RFCs are identical, the Court need only cite to one. (AR. at 57-59, 99-100.)

[2] The significance of "LSC," which the ALJ apparently interpreted as limited social contact, "limited social interaction," or "occasional public interaction" (AR. at 45), is discussed in further detail below.

[3] At the hearing, the VE testified Plaintiff's only past relevant work was a composite of two different jobs in the DOT: stock clerk and sales attendant. (AR. at 45.) If a claimant has past relevant work that is a composite of two or more jobs, to be found not disabled at step four, she must be able to perform the job as she actually performed it, not as it is "generally performed." Social Security Administration, Program Operations Manual System DI § 25005.020(B). In the ALJ decision, he concluded Plaintiff performed these jobs separately and that Plaintiff's RFC permitted her to perform the job of stock clerk. (AR. at 22.) These conclusions are erroneous as they misinterpret the VE's testimony. (AR. at 45.)

1   occupational base of unskilled work contrary to the ALJ's findings, and that, as a result,

2   the ALJ should have consulted the VE regarding available jobs. (Pl. Br. at 8-13.)

3   **IV.   DISCUSSION**

4         The Court will address only whether the ALJ erred by relying on the Medical-

5   Vocational rules instead of obtaining testimony from the vocational expert to determine

6   whether Plaintiff could perform jobs at step five. (Pl. Br. at 6, 9.) Plaintiff argues a

7   limitation to "no more than occasional public interaction," along with the other mental

8   limitations the ALJ acknowledged in the decision, erodes the occupational base, and hence,

9   that vocational testimony was required to find Plaintiff not disabled at step five. (Pl. Br. at

10   8-12.) Defendant argues the RFC as written does not sufficiently erode the occupational

11   base, and that VE testimony was not required. (Def. Br. at 5-8.) In Plaintiff's Reply, she

12   raises for the first time her contention that "[t]he RFC assessment was legally insufficient

13   and not based on substantial evidence." (Reply at 4.) Because Plaintiff substantively

14   briefed this argument for the first time in her Reply, it is waived.

15         The Commissioner may satisfy her burden of identifying work at step five by either

16   soliciting the testimony of a vocational expert or citing the Medical-Vocational rules.

17   *Tackett v. Apfel*, 180 F.3d 1094, 1100-1101 (9th Cir. 1999). The Medical-Vocational rules,

18   also known as the "grid rules," indicate whether jobs exist in significant numbers in the

19   national economy based on a claimant's age, education, work experience, and RFC.

20   *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). The Commissioner must apply the grid

21   rules if a claimant suffers only from exertional, or strength-related, limitations at step five.

22   *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). When a claimant suffers from

23   both exertional and non-exertional limitations (such as mental, sensory, postural, or

24   manipulative limits), the ALJ "must examine independently the additional adverse

25   consequences resulting from the nonexertionary impairment." *Id*. at 1156. The Grid rules

26   may only be used when they "accurately and completely describe the claimant's abilities

27   and limitations." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (citing *Jones v.

28   Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)). Still, "the fact that a non-exertional limitation

is alleged does not automatically preclude application of the grids." *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). Vocational expert testimony is only required when a claimant's non-exertional limitations "are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations . . . ." *Burkhart*, 856 F.2d at 1340 (citing *Desrosiers*, 846 F.2d at 577).

Plaintiff argues "[t]he ALJ specifically found [Plaintiff] has numerous non-exertional limitations[.]" (Pl. Br. at 10.) In support, she notes at step two the ALJ's boilerplate conclusion that Plaintiff's "impairments constitute more than slight abnormalities and have had more than a minimal effect on [her] ability to perform basic work activities" (Pl. Br. at 10); at step three the ALJ's conclusion that Plaintiff has mild and moderate limitations in broad categories of mental health functioning (Pl. Br. at 10); and in the discussion of RFC, that the prior administrative medical opinions, which the ALJ deemed "very persuasive," indicated Plaintiff had moderate limitations in a variety of different functional categories including maintaining attention and concentration, completing a normal workday or work week without interruptions from symptoms, performing at a consistent pace, responding appropriately to work setting changes, getting along with coworkers without distracting them or exhibiting behavioral extremes, and accepting instructions and criticism from supervisors. (Pl. Br. at 12.)

Plaintiff argues these administrative findings at other steps contradict the RFC (Pl. Br. at 12), but finding an impairment severe at step two does not dictate an ALJ's conclusions with respect to the RFC,[4] and the psychiatric review technique utilized at step

---

[4] The standard of impairment "severity" at step two is merely "a de minimis screening device [used] to dispose of groundless claims[.]" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citations and quotations omitted). Conversely, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996) (SSR 96-8p). Thus, while the ALJ concluded Plaintiff's depression and anxiety "had more than a minimal effect on [her] ability to perform basic work activities," (AR. at 17-18), this conclusion does not necessarily translate into limitations expressed through RFC. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five.")

three is not an RFC.[5] It is a claimant's RFC—and not some other administrative finding addressing the extent of Plaintiff's limitations or the severity of her impairments—which dictates whether a claimant can perform her past relevant work or other work. *See* 20 C.F.R. § 404.1545(a)(5).

As Defendant notes, several Courts in this Circuit have held a VE is not needed when a claimant is limited to unskilled work with only occasional public interaction. *E.g.*, *George v. Berryhill*, 727 Fed. Appx. 287, 290-91 (9th Cir. 2018) (unpublished) ("George argues the limitations in his [RFC] concerning social contact and performing simple tasks significantly detract from the base of occupations he could perform as represented by the Grids, and therefore the ALJ erred by not hearing testimony from a vocational expert. However, the Grids encompass only unskilled work, which by definition involves only simple tasks and usually does not entail extensive personal contact . . . Consequently, George's limitations would not significantly affect the base of unskilled work he could perform.") (citations omitted); *e.g.*, *Cowen v. Comm'r of Soc. Sec.*, 400 F. App'x 275, 277 (9th Cir. 2010); *Long v. Colvin*, No. 2:12-CV-1698 DAD, 2013 WL 4776553, at *1, 4 (E.D. Cal. Sept. 4, 2013).

Contrarily, Plaintiff argues a VE may be required if an individual is limited to both occasional public interaction *and* occasional interaction with supervisors and coworkers. *E.g.*, *Terrill v. Berryhill*, Case No. 1:17-cv-00751-BAM, 2018 WL 4503429, at *4 (E.D. Cal. Sept. 19, 2018) (collecting cases); *Mendoza v. Saul*, No. 1:18-CV-00925-SKO, 2019 WL 4189686, at *11-12 (E.D. Cal. Sept. 4, 2019). As Plaintiff points out, the non-examining physicians assigned Plaintiff "moderate" limitations in her ability to accept instructions, respond appropriately to supervisory criticism, and get along with coworkers or peers (AR. at 99-100), and the ALJ found these physicians' opinions "very persuasive." (AR. at 21.) While Plaintiff is correct these physicians assigned several moderate limitations in different functional categories, the clear instructions on the assessment form each doctor completed state those moderate limits do not compose the RFC. (AR. at 98.)

---

[5] SSR 96-8p, at *4.

The assessment form states, "The questions below [prompting a rating in each functional category] help determine the individual's ability to perform sustained work activities. However, *the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)*, which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation . . . ." (AR. at 98, emphasis added.) In the explanatory sections, each physician concluded Plaintiff could (1) "understand and remember simple and some detailed instructions"; (2) sustain concentration, persistence, and pace "for simple and detailed work tasks under ordinary supervision"; (3) "socialize with co-workers and supervisors with LSC"[6]; and (4) "adapt to the usual demands of low-stress work." (AR. at 100.) It is these statements, and not the assortment of "moderate" limitations Plaintiff cites, which compose the RFC.

At the hearing, the ALJ appeared to ask the VE a hypothetical question based upon these narrative assessments.[7] (AR. at 45-46.) The ALJ asked the VE to assume an individual who "maintains the ability to socialize with coworkers and supervisors, but with limited social interaction," *i.e.*, "no more than occasional public interaction," and the ability to maintain concentration, persistence, and pace for simple and detailed work tasks under ordinary supervision. (AR. at 45-46.) In the decision, the ALJ articulated the RFC as "simple and some detailed work with no more than occasional public interaction." (AR. at 20.) The ALJ's interpretation of the RFC as opined by Drs. Fo and Morgan was that Plaintiff had no limitation in interacting with coworkers and supervisors. (AR. at 20.) This interpretation is reasonable given the language in the assessment: "Explain in narrative form the social interaction capacities and/or limitations: Able to socialize with co-workers and supervisors with LSC." (AR. at 100.) It is the ALJ's province to resolve ambiguities in the record, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), and the ALJ's

---

[6] Plaintiff interprets the acronym "LSC" as "limited to superficial contact" (Reply at 3, 5) while Defendant interprets it as "limited social contact" (Def. Br. at 8). The ALJ's interpretation is consistent with Defendant's interpretation. (AR. at 45.)

[7] That the ALJ based his hypotheticals on the opinions of Drs. Fo and Morgan is not an unreasonable presumption considering their opinions are the only mental RFCs in the file.

interpretation of the doctors' assessments is rational and supported by substantial evidence, *Thomas*, 278 F.3d at 954. The ALJ cited Plaintiff's reported improvement, normal mental status examinations, and ability to interact with family in support of his RFC finding. (AR. at 21.) The Court finds substantial evidence supports the ALJ's interpretation of the record with respect to RFC.[8]

Even assuming, for the sake of argument, a material difference between the ALJ's RFC and the prior administrative medical findings, which could give rise to legal error without some reasoning backed by substantial evidence,[9] Plaintiff did not challenge the sufficiency of the RFC until her Reply. (Reply at 4-6.) Instead, in her Opening, she conflated the function-by-function assessment set out in the RFC with other administrative findings, such as the ALJ's conclusion Plaintiff suffers from severe mental health impairments, the conclusion Plaintiff has mild and moderate limitations of functioning in broad functional categories at step three, and the ALJ's conclusion the prior administrative medical opinions were persuasive. (Pl. Br. at 9-12.) Plaintiff argues in the Opening Brief that the ALJ "contradicts" his own earlier findings but does not offer substantive analysis or argument as to why the ALJ's action was erroneous. (Pl. Br. at 12.) Moreover, Plaintiff's argument seems to be predicated on an incorrect premise that an ALJ's findings at steps two and three dictate RFC findings.

The Court finds Plaintiff's argument that the ALJ's RFC assessment is insufficient or that he improperly rejected aspects of the prior administrative medical opinions is waived because Plaintiff did not raise the issue before her Reply. *E.g.*, *Elleston v. Astrue*, 319 F. App'x 621, 623 (9th Cir. 2009) (unpublished) (argument raised for the first time in the Reply is waived). In Plaintiff's Opening, she argues the ALJ should have solicited

---

[8] The ALJ cited, for instance, mental status examinations showing no significant symptoms or few significant symptoms. (AR. at 403-403, 442, 456, 478.) While Plaintiff occasionally exhibited additional symptoms, the Court finds the ALJ's conclusion to be supported by the record as a whole. *Orn*, 495 F.3d at 630.

[9] *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984) (an ALJ must "explain why significant probative evidence has been rejected") (internal quotations and citations omitted).

vocational expert testimony regarding available jobs at step five because the RFC sufficiently eroded the occupational base. (Pl. Br. at 12-13.) In her Reply, Plaintiff argues the RFC itself is legally insufficient, and that the ALJ did not provide reasons to support rejecting, in part, the opinions of physicians who assigned to Plaintiff moderate limitations in different functional areas. (Reply at 4-6.) These issues are materially distinct.

Further, it is not reasonable or warranted to infer that Plaintiff made this argument in her Opening Brief when she asserted the ALJ's step five conclusion amounts to "a 180 degree turn" which contradicts his other administrative findings (Pl. Br. at 12), or that "based upon the substantial evidence of record, the medical opinions of the state agency psychologists, and notably, based upon the ALJ's own explicit findings in his decision, Wheatley's numerous non-exertional limitations had more than little or no effect on Wheatley's ability to perform the basic mental demands of unskilled work." (Pl. Br. at 13) (emphasis in original.) The courts "will not do an appellant's work for [her], either by manufacturing [her] legal arguments, or by combing the record on [her] behalf for factual support[.]" *Western Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012). Plaintiff's issues must be argued with *specificity*. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (refusing to consider an issue that was not argued with "any specificity" in the briefs). That Plaintiff did not do so here is apparent not just from her own Opening Brief, but from Defendant's Response.[10] It is puzzling then, when Plaintiff further asserts in her Reply that "the Defendant was unresponsive in its brief to [Plaintiff's] proof that the ALJ cited to no evidence that [Plaintiff's] work-related deficits pertaining to *coworkers* and *supervisors* were not significant nonexertional limitations or that such deficits precluded an individual from performing unskilled work on a sustained basis." (Reply at 6.) Plaintiff asserts again that "Defendant fails to address the ALJ's

---

[10] The Commissioner states, "Because Plaintiff's challenge to the ALJ's decision is limited to step four and step five . . ., the medical evidence has limited relevance in this case." (Def. Br. at 2 n. 2.) If Plaintiff had distinctly challenged the ALJ's RFC for a lack of substantial evidence in her Opening, Defendant would risk conceding the issue by failing to respond to it. *See Landeros Zamora v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05119-PHX-DLR, 2020 WL 5810060, at *3 (D. Ariz. Sept. 30, 2020). A discussion of whether substantial evidence supports the RFC necessarily entails some analysis of the medical evidence.

1  inexplicable omission from the RFC assessment." (Reply at 7.) But aside from observing

2  the ALJ's RFC does not comport with his other administrative findings, Plaintiff does not

3  sufficiently address the issue either. The issue Plaintiff briefed in her Opening was, "At

4  step five, the ALJ erred by failing to obtain vocational expert testimony and improperly

5  relying solely on Social Security's vocational guidelines." (Pl. Br. at 6.)

6      "It is well established in this circuit that the general rule is that appellants cannot

7  raise a new issue for the first time in their reply briefs." *Fernandez v. Massanari*, 12 F.

8  App'x 620, 621 (9th Cir. 2001) (citing *Northwest Acceptance Corp. v. Lynnwood Equip.,*

9  *Inc.*, 841 F.2d 918, 924 (9th Cir.1988)). Because Plaintiff failed to challenge the sufficiency

10 of the RFC in her Opening, and the RFC as written would not require vocational testimony,

11 *e.g.*, *George*, 727 Fed. Appx. at 290-91,[11] the Court affirms the ALJ's decision.

12 **V.    CONCLUSION**

13     The Court finds that the ALJ did not err by relying exclusively upon the grid rules

14 at step five. (AR. at 23.)

15     **IT IS THEREFORE ORDERED** affirming the February 26, 2020 decision of the

16 Commissioner of Social Security (AR. at 15-24.)

17     **IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

18     Dated this 9th day of May, 2022.

19

20

21

22                    Honorable Susan M. Brnovich
                       United States District Judge

23

24

25

26

---

27 [11] Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules as a
   Framework for Evaluating Solely Non-Exertional Impairments, SSR 85-15, 1985 WL
28 56857 at *4 (S.S.A. 1985) (explaining unskilled work typically involves working with
   objects, rather than data or people).